Michael T. Stoller, Esq., (Bar No. 120241)
LIBERTY LAW GROUP
7215 Canby Avenue
Reseda, California 91335
Telephone: 310-245-4028
Email: michael.stoller@stollerlawgroup.com

Attorney for Plaintiffs
RITA LOOF, RENE LOOF, AND RACHEL LOOF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RITA LOOF AND SARAH LOOF

Plaintiffs,

v.

UPLAND UNIFIED SCHOOL DISTRICT

Defendant.

Case No. 5:21-cv-00556-JGB-SPx

**FIRST AMENDED COMPLAINT FOR REVERSAL OF DISMISSAL OF AN ADMINISTRATIVE DUE PROCESS COMPLAINT**

Courtroom.: 1
Judge: Hon. Jesus G. Bernal

Plaintiffs allege as follows:

## I. JURISDICTION

1. This Court has original jurisdiction over this action under the Individuals with Disabilities Education Act, 20 U. S. C. § 1400-1482. Plaintiffs were the

Petitioners in a due process hearing complaint filed with the California Office of Administrative Hearings ("OAH"), Case # 2020090375.

2. Jurisdiction in this complaint for review of the administrative due process decision is conferred by 20 U. S. C. § 1415(i)(3)(A).

## II. THE PARTIES

3. Plaintiff S.L. is a 24-year-old student with a disability. At all times relevant to this complaint – the 2018-2019 school year – she was a student residing in the attendance area of Defendant and well under the cut-off age for special education of 22 years old. S.L. was eligible for special education as a student with Specific Learning Disabilities, and she was eligible for special education under IDEA and State law for her entire school career.

4. Plaintiff RITA LOOF is the mother of S.L. and, at all times relevant to this complaint, was, along with her husband, responsible for providing educational services to S.L. when the District denied her a free appropriate public education (FAPE) under IDEA and State law.

5. Defendant UPLAND UNIFIED SCHOOL DISTRICT (District, Upland, UUSD) is a school district duly organized and existing under the laws of the State of California as a Local Educational Agency (LEA). At all times relevant to this matter, the District had the responsibility to respond to assessment requests of S.L., to assess comprehensively, and then to offer a FAPE as required by IDEA and State law, and had the duty to comply with all mandates of IDEA.

////////////

///////////

## III. RELEVANT PROCEDURAL HISTORY

6. On September 11, 2020, Plaintiff Rita Loof filed a request for a due process hearing with the Office of Administrative Hearings (OAH) on behalf of her daughter S.L. --OAH Case No. 2020090375. On December 15, 2020, Defendant filed a motion with OAH requesting dismissal of Plaintiffs' complaint on the basis of collateral estoppel, because OAH had issued a decision on November 24, 2020 (2020 Decision) in consolidated OAH cases 2019080542, 2020040245, and 2020010465, involving Student and Upland Unified. Plaintiffs did in fact file Case 2:21-cv-06144 in this Court for reversal of that administrative decision, which is now pending in this Court.

7. The Issues raised in the two OAH Cases were as follows:

| Issues in OAH Case Nos. 2019080542, 2020040245, and 2020010465 ("November 2020 Decision") | Issues in OAH Case No. 2020090375 |
|---|---|
| 1. Did Upland significantly impede Parent's opportunity to participate in the educational decision making process by failing to explain to Parent why Upland wanted to do additional assessments under an October 19, 2016 assessment plan after having conducted a triennial reassessment in 2015? | Issue No. 1—Failure to timely convene an annual IEP meeting for the 2018-2019 school year and Extended School Year. |
| 2. Did Upland deny Student a free appropriate public education, called a FAPE, by failing to provide Parent prior written notice in response to Parent's October 19, 2016 request for independent educational evaluations? | Issue No. 2—Failure to have an annual FAPE offer in place for the 18-19 school year and Extended School Year. |
| 3. Did Upland deny Student a FAPE in the October 31, 2016 individualized | Issue No. 3—Failure to timely fund or file pursuant to 34 C.F.R. 300.502 for |

| | |
|---|---|
| education program, called an IEP, by: a. Failing to consider areas of need in which Student had not been assessed, specifically post-secondary transition, central auditory processing, attention, and the need for assistive technology; a. Failing to consider areas of need in which Student had not been assessed, specifically post-secondary transition, central auditory processing, attention, and the need for assistive technology; b. Failing to include present levels of performance in all areas of unique need; c. Failing to develop appropriate goals based on present levels of performance; d. Significantly impeding Parent's opportunity to participate in the educational decision making process by failing to discuss or consider private services Student was receiving from Lindamood-Bell, tutoring, and speech therapy; e. Failing to place Student in the appropriate grade level; f. Failing to offer appropriate placement, the least restrictive environment, for the 2016-2017 regular school year and 2017 extended school year; and g. Failing to develop an appropriate post-secondary transition plan? | the Independent Evaluation Request by parent. |
| 4. Did Upland deny Student a FAPE by failing to provide Parent prior written notice in response to Parent's October 31, 2016 request for independent educational evaluations? | Issue No. 4— Whether the District failed to timely file a due process hearing complaint in 2018-19 when it believed the parent allegedly failed to consent to the proposed assessment plan for Sarah. |
| 5. Did Upland deny Student a FAPE by | Issue No. 5— Missing because of a |

| | |
|---|---|
| failing to timely respond to Parent's October 31, 2016 request for independent educational evaluations, either by funding them or filing to establish Upland's own assessments were appropriate, in the areas of:<br>a. Neuropsychology;<br>b. Assistive technology; and<br>c. Central auditory processing? | typo in the numbering of the issuers in Student's Due Process Complaint. |
| 6. Did Upland deny Student a FAPE by failing to timely assess Student, after Parent's October 31, 2016 request, in all areas of suspected disability, specifically:<br>a. Sensory integration praxis;<br>b. Visual motor integration;<br>c. Visual perceptual skills;<br>d. Magnocellular needs;<br>e. The need for vision therapy;<br>f. The need for an interactive metronome; and<br>g. The need for assistive technology? | Issue No.6—Failure to convene an IEP meeting within 30 days of parent request.<br>a) Did the District take any steps to schedule an IEP meeting in 2019-2019? |
| 7. Did Upland deny Student a FAPE by failing to provide Parent legally compliant prior written notice of Upland's November 18, 2016 decision not to provide Student Kurzweil as assistive technology after Upland offered it to Student in the October 31, 2016 IEP? | Issue No. 7— Failure to allow parent meaningful participation in the IEP process when it failed to provide to her District's written offer of FAPE and IEP for the 2018-19 school Year. |
| 8. Did Upland deny Student a FAPE by failing until January 2020 to file a request for a due process hearing to obtain a determination from OAH that the October 31, 2016 IEP offered Student a FAPE, after Parent did not consent? | Issue No. 8—Failure to offer and/or provide appropriate Transition Assessments and Services.<br>a) Failure to develop appropriate, measurable, post-secondary goals based upon age appropriate transition assessments related to training, educa- |

| | |
|---|---|
| | tion, employment, and, where appropriate, independent living skills.<br>b) Failure to offer transition services to assist Sarah in reaching post-secondary goals, vocational education goals, integrated employment goals (including supported employment), continuing and adult education, adult services, independent living, and community participation. |
| 9. Did Upland deny Student a FAPE by failing, before August 21, 2017, and thereafter, to convene an annual meeting to develop an IEP for the 2017-2018 school year and 2018 extended school year? | Issue No. 9— Whether the District failed to conduct assessments requested by parents and convene an IEP meeting within 60 days of parent request. |
| 10. Did Upland deny Student a FAPE by failing to convene an IEP team meeting before August 21, 2017, and thereafter, to review independent assessments by Dr. Stephey and Lindamood-Bell? | Issue # 10 – Failure to provide parents with an assessment plan within 15 days of parent request for the 2018-2019 school year. |
| 11. Did Upland deny Student a FAPE by failing to timely complete assessments to which Parent consented on December 13, 2017? | Issue # 11 – If the district 2016 assessment plans were considered valid and in effect for the 2018-2019 school years, did it comply with Ed. Code §§ 56321(a), 56381(f)(1) and § 56329(a)(1).<br>a) Did the assessment plans of 2016 provide parents written notices that notified the parent that an IEP team meeting will be convened, following completion of the assessment.<br>b) Did the assessment plans of 2016 notify parent that the IEP meeting will include a discussion of whether student is an individual with special needs, the |

| | |
|---|---|
| | assessment results, the educational recommendations, and the reasons for the recommendations made. (Ed. Code § 56329(a)(1).) |
| 12. Did Upland deny Student a FAPE by failing to file a request for a due process hearing to obtain OAH authorization to conduct assessments to which Upland contended Parents did not provide consent in December 2017? | Issue # 12 – Did the District determine that the IEP of 2016 was considered a FAPE for the 2018-2019 school year and did the District initiate a due process hearing as required by California Education Code 56346(f)? |
| 13. Did Upland deny Student a FAPE by failing to provide Parent prior written notice in response to Parent's June 6, 2018 request for independent educational evaluations? | Issue No. 13— Whether the District's denial of FAPE for Sarah resulted in denials of her rights under Section 504, ADA, California Government Code § 11135, the California Civil Code §§ 54 and 54.1, and the Unruh Act. |
| 14. Did Upland deny Student a FAPE by failing to provide Parent prior written notice in response to Parent's July 26, 2018 request for independent educational evaluations? | Issue #14 – Did the District conduct a reevaluation of Student after parent's requested it for the 2018-2019 school year, pursuant to 20 U.S.C. 1414 (a)(2)(A)(ii). [This issue was raised by Student in a Motion to Amend of 1/18/21 which OAH never responded to] |
| 15. Did Upland deny Student a FAPE by failing to timely assess Student, after Parent's July 26, 2018 request, in all areas of suspected disability, specifically:<br>a. Sensory integration praxis;<br>b. Visual motor integration;<br>c. Visual perceptual skills;<br>d. Magnocellular needs;<br>e. The need for vision therapy;<br>f. The need for an interactive metronome; and<br>g. The need for assistive technology? | Issue #15 – Did the District timely provide the parent with an Assessment Plan in response to parent request for assessments in 2018-2019 pursuant to Education Code 56043(a), denying parent ability to consent? Footnote 1 |

| | |
|---|---|
| 16. Was Student a parentally placed private school student for the 2017-2018 and 2018-2019 school years and, therefore, not entitled to a FAPE from Upland? [UUSD's Issue] | Issue #16 – Did the District provide notice to the parents describing any evaluation procedures it proposed to conduct for the 2018-2019 school year pursuant to20 U.S.C. 1415 (b)(3) 20 U.S.C. 1415 (b)(4) and 20 U.S.C. 1415 (c) Footnote 1 |
| 17. Was Student entitled to a FAPE from Upland during the 2017-2018 and 2018-2019 school years after Parents refused to consent to the September 30, 2016, and October 24, 2016 assessment plans? [UUSD's Issue] | Issue #17 – Did the District, at any time, notify parents that it had determined Student was not eligible for special education services in the 2018-2019 school year pursuant to 20 U.S.C. 1415 (b)(3). Footnote 1 |
| 18. If Upland was obligated to have an IEP in place for Student during the 2017-2018 and 2018-2019 school years, did the October 31, 2016 IEP constitute a FAPE, and continue to be in effect/available to Student through the final date of Student's eligibility for special education and related services? [UUSD's Issue] | |
| | Issue #18 – Did the District's IEP team determine whether Student continued to be a child with a disability in the 2018-2019 school year and did the District notify the parent of its determination pursuant to 20 U.S.C. 1414(a)(4)(A)(i) Footnote 1 |
| | Issue #19 – Did the District inform the parents of their right to request an assessment to determine whether Student continued to be a child with a disability and to determine the child's educational needs pursuant to 20 U.S.C. 1414(a)(4)(A)(ii) Footnote 1 |
| | Issue #20 – Did the District evaluate |

| | |
|---|---|
| | Student in order to determine that Student was no longer a child with a disability pursuant at any time in 2018-2019 pursuant to 20 U.S.C. 1414(a)(5)(A) Footnote 1 |
| | Issue #21 – Did the District provide Student with a Summary of Performance pursuant to 20 U.S.C. 1414(a)(5)(B)(ii) upon termination of Student's eligibility. Footnote 1 |

8. On December 30, 2020, OAH Issued an order granting request for official notice of the November 24, 2020 decision and granting motion to dismiss issues barred by the doctrine of collateral estoppel; order dismissing non- IDEA claims; order granting motion to amend complaint and dismissing issues barred by collateral estoppel and non- idea claims. In the order OAH was allowing an amendment of the complaint. OAH's order stated:

"The matter will proceed on the remaining issues, specifically, Issues 10, 11(a), 11(b), and 12. The amended complaint shall be deemed filed on the date of this order. All applicable timelines shall be reset as of the date of this order. OAH will issue a scheduling order with the new dates." As far as Student knows, Issues 11(a), 11(b) and 12 were never dismissed by OAH. UUSD's Motion to Dismiss before this Court does not mention those issues.

The new scheduling order set a new hearing date of February 13, 2021."

But, in OAH Case No. 2020090375, the ALJ entirely failed to address Plaintiffs' issues #11(a), #11(b), #12. These were raised at OAH by Plaintiffs, but they were never addressed at hearing or before. Defendants never moved to dismiss them, and so they were never dismissed. The ALJ simply dismissed the whole case without either Defendant or the ALJ himself having addressed them in any way.

9. On January 7th, 2021 Student filed a request to OAH, seeking reconsideration of the December 2020 order to dismiss OAH Case No. 2020090375. UUSD did not file a response with OAH. Less than 24 hours later, On January 8, 2021 OAH denied Student's request for reconsideration. On January 18, 2021 Student filed a request to amend OAH Case No. 2020090375 with OAH. Student's request was timely Student sought to add the following issues:

Issue #14 – Did the District conduct a reevaluation of Student after parent's requested it for the 2018-2019 school year, pursuant to 20 U.S.C. 1414 (a)(2)(A)(ii).

Issue #15 – Did the District timely provide the parent with an Assessment Plan in response to parent request for assessments in 2018-2019 pursuant to Education Code 56043(a), denying parent ability to consent?

Issue #16 – Did the District provide notice to the parents describing any evaluation procedures it proposed to conduct for the 2018-2019 school year pursuant to20 U.S.C. 1415 (b)(3) 20 U.S.C. 1415 (b)(4) and 20 U.S.C. 1415 (c)

Issue #17 – Did the District, at any time, notify parents that it had determined Student was not eligible for special education services in the 2018-2019 school year pursuant to 20 U.S.C. 1415 (b)(3).

Issue #18 – Did the District's IEP team determine whether Student continued to be a child with a disability in the 2018-2019 school year and did the District notify the parent of its determination pursuant to 20 U.S.C. 1414(a)(4)(A)(i)

Issue #19 – Did the District inform the parents of their right to request an assessment to determine whether Student continued to be a child with a disability and to determine the child's educational needs pursuant to 20 U.S.C. 1414(a)(4)(A)(ii)

Issue #20 – Did the District evaluate Student in order to determine that Student was no longer a child with a disability pursuant at any time in 2018-2019 pursuant to 20 U.S.C. 1414(a)(5)(A)

Issue #21 – Did the District provide Student with a Summary of Performance pursuant to 20 U.S.C. 1414(a)(5)(B)(ii) upon termination of Student's eligibility.

Student did not receive a response from OAH regarding the request to amend filed on January 18, 2021. However, shortly thereafter Student tried to access documents uploaded by OAH, but discovered there were no files in the system and it appeared the case had been closed. To date OAH has never issued an order dismissing Issues #14 through #21. These issues were raised by Plaintiffs at OAH, but they were never addressed at hearing or before. Moreover, Defendants never moved to dismiss them, and so they were never dismissed. Apparently the ALJ simply dismissed the whole case without either Defendant or the ALJ himself having addressed them in any way.

## III. FACTUAL BACKGROUND

10. In February and March 2018, the Parties were engaging in settlement negotiations which led to two separate settlement agreements. UUSD, never complied with the terms under those agreements which would have provided services to S.L. and settled all disputes, including the issues raised in OAH Case No. 2020090375. The March 2018 agreement was unanimously approved by the UUSD school board. On June 6, 2018, after months of not hearing from the District regarding scheduling of S.L.'s IEP and realizing that district staff would not comply with its own board directives; Mrs. Loof reached out again, this time to the new Director of Student Services Anthony Farenga (prior to Mr. Farenga's arrival Mrs. Loof had been corresponding with former Director of

Student Services, Rochelle Yatomi). Mrs. Loof reiterated her interest in receiving an offer of Free Appropriate Public Education from the district. She asked for her child to be assessed and reiterated her consent to have her child assessed for special education. This, in fact, constituted a new referral for special education assessments by the Parent. Mrs. Loof's communication indicated that S.L. would be in the twelfth (12th) grade in the fall of 2018 (the 2018-2019 School Year) and that she had not received either a certificate of completion[1] or a high school diploma and remained eligible for special education services and for services provided by the district to its residents. "Since to date, I have not received an offer of FAPE from your district, I have had no other choice than to continue to provide educational services at my own expense….. In the interest of moving the process along, and based on my child's past assessment experience, I continue to consent to any of the tests administered to my child by your district in the past."—stated the letter. Mrs. Loof also made S.L. available to the District for assessments as follows:

- Monday, June 11th, 2018; 11:30 p.m. to 1:30 p.m.
- Wednesday June 13th, 2018; 11:00 a.m. to 1:00 p.m.
- Friday June 15th, 1:00 p.m. to 3:00 p.m.

She requested the following assessments:

--Sensory Integration Praxis Test

--Visual Motor Integration Test

--Test of Visual Perceptual Skills

--Vision Therapy Assessment

--Interactive Metronome Assessment

[1]In fact, a certificate of completion would not have affected S.L.'s eligibility to be assessed on parent referral and offered an IEP, because only a regular high school diploma, and not alternate lesser credentials, terminates eligibility to receive a FAPE. 34 CFR 300.102(a)(3)(iv).

--Magnocellular Assessment.

--Independent Neuropsychological Assessment by Dr. Timothy Gunn (because she was in disagreement with the District's assessments)

Mrs. Loof requested that the district hold an IEP meeting for Sarah and set aside **9.5 hours** in her schedule for the district, making herself available for an IEP meeting as follows:

- Monday June 11th, 2018; 11:30 p.m. to 1:30 p.m.
- Monday June 11th, 2018; 2:30-4:30 p.m.
- Wednesday June 13th, 2018; 11:00 a.m. to 1:00 p.m.
- Wednesday June 13th, 2018; 2:00 p.m. to 3:30 p.m.
- Friday June 15th, 2018; 1:00 p.m. to 3:00 p.m.

She offered to provide additional dates for the IEP meeting if needed.

11. On June 7, 2018, Mr. Farenga sent an e-mail to Mrs. Loof, acknowledging receipt of her letter and committing to follow up on her requests. But, Mr. Farenga did not follow through with his promise and did not take steps to convene an IEP meeting for Sarah, conduct assessments requested in Mrs. Loof's letter or grant the Independent Evaluation for a neuropsychological assessment. Instead, Mr. Farenga responded on June 25, 2018 by claiming that the district would not assess S.L. because Mrs. Loof had imposed conditions on the assessment plan. Mr. Farenga also stated the District's position that Sarah was not entitled to an offer of FAPE from the District.

12. On July 26, 2018, Mrs. Loof sent a letter to Mr. Farenga, once again consenting to special education assessments for S.L. and reiterating her request for an offer of FAPE from the district. "Sarah continues to reside in our home which is within the boundaries of the Upland Unified School District (UUSD). Since to date, I have not received an offer of FAPE from your district, I have had no

other choice than to continue to provide educational services at my own expense. Since UUSD continues its refusal to make an offer of FAPE for Sarah, I have had no opportunity to accept or reject any placement offer whatsoever since the last offer was made in 2016. At no time have I revoked my consent for the provision of special education and related services to Sarah and hereby reiterate my previous requests for the district to hold an IEP meeting and develop an offer of FAPE."—stated the letter. Mrs. Loof's letters of June 6th, 2018 and July 26, 2018 were at the very least, referrals for initial assessment that triggered UUSD's duty to assess.

13. Mrs. Loof disagreed with many of the assertions in Mr. Farenga's letter dated June 25, 2018 as factually inaccurate and misrepresenting of her position. She clarified that she did not provide "conditional" consent. She indicated that the assessment plan form she received did not provide sufficient information to allow her to meaningfully participate in the assessment process and make informed decisions about her child's assessments. "I remain open to any proposal the district would wish to make. I am simply requesting to be informed. I do not dispute the assessor's professional discretion. I am only asking that they share the information so that I can have access to the same information that district staff has access to."—the letter stated. Mrs. Loof reiterated consent to any of the tests administered to S.L. by the district in the past and requested Prior Written Notice for any additional assessments needed. She set aside **10 hours** in her schedule to make Sarah available to UUSD for assessments.

She made S.L. available for assessments as follows:

- July 30th, 2018; 12:00 p.m. to 2:00 p.m.
- July 30th, 2018; 2:00 a.m. to 4:00 p.m.
- August 1st, 2018; 1:00 p.m. to 3:00 p.m.

- August 3rd, 2018; 11:00 a.m. to 1:00 p.m.
- August 3rd, 2018; 1:00 p.m. to 3:00 p.m.

She offered to provide additional dates if those provided were not convenient for district staff. She requested assessments and Independent Evaluations. She reiterated her previous requests for an IEP meeting and provided a copy of the most recent testing by Lindamood-Bell. Mrs. Loof made herself available for an IEP meeting (if assessments were not scheduled) as follows:

- July 30th, 2018; 12:00 p.m. to 2:00 p.m.
- July 30th, 2018; 2:00 a.m. to 4:00 p.m.
- August 1st, 2018; 1:00 p.m. to 3:00 p.m.
- August 3rd, 2018; 11:00 a.m. to 1:00 p.m.
- August 3rd, 2018; 1:00 p.m. to 3:00 p.m.

"Without an IEP meeting there is no process for me to ask questions and voice concerns based on current information, instead of relying on an IEP that is almost two years old."—stated Mrs. Loof's letter of 7/26/18.

14. On September 13th, 2018 Mr. Loof sent an email to the Upland School Board informing them that services that had been promised to Sarah were not being provided by the District and that the lack of services were causing her harm.

15. On May 14, 2019, Mrs. Loof sent a letter to Anthony Farenga of UUSD, requesting an IEP meeting and consenting to assessments. Mrs. Loof also requested an offer of Free Appropriate Public Education from the district. She consented to a thirty (30) minute observation by district staff at the Lindamood-Bell clinic in Upland. She reiterated her consent for assessments and previous requests for Independent Evaluations. The May 14th, 2019 letter was yet another referral for assessment by the Parent that triggered UUSD's

duty to assess. Mrs. Loof made herself available to the District for an additional **<u>6 hours</u>** for an IEP meeting.

"Due to the district's failure to offer FAPE at the last IEP meeting I had no other recourse but to provide private educational services for Sarah. I continue to request an offer of FAPE from your district. Please schedule an IEP meeting for Sarah to discuss issues such as her transition from High School. I would be available as follows:

- Wednesday 5/15/19; 10:30 a.m. to 1:00 p.m.
- Wednesday 5/22/19; 10:30 a.m. to 1:00 p.m.
- Thursday 5/23/19; 10:30 a.m. to 1:00 p.m.

If these dates are not convenient for the staff, please let me know and I will provide additional dates for your consideration."—the 5/14/19 letter stated.

16. The District ignored Mr. Loof's requests for assessment and an IEP meeting and in fact, never scheduled an IEP meeting for S.L. or conducted any assessments following the requests in the 5/14/19 letter.

17. On June 4th, 2019, in response to a filing by the District which claimed they had no knowledge of whether or not S.L. resided in the District, Mrs. Loof sent a letter to UUSD Superintendent Nancy Kelly, providing Internal Revenue Services documents (from 2016 to 2018) which confirmed that S.L. was a resident of Upland Unified at all relevant times.

18. On August 16th, 2019 Mrs. Loof filed a request for Mediation Only with the Office of Administrative Hearings in an effort to resolve the issues related to the 2018-2019 school year. UUSD did not settle the dispute.

19. On October 21, 2019, Mrs. Loof wrote to UUSD Superintendent Nancy Kelly expressing concern over UUSD's failure to provide services to S.L. Her letter stated:

"My child continues to be harmed by the district's stall and delay tactics. My child is being denied access to any and all programs and benefits of the UUSD to which she's entitled to. My child is being denied special education and related services by your district. The discrimination excluded my child from participation in district special education programs and denied my child the benefits to which other students in the district have access. These actions amount to discrimination which is severe and pervasive and has persisted over years. Your school district has control over both the site of the discrimination and over any district personnel involved, including but not limited to your legal counsel. I am requesting that, as the responsible official, you take steps to stop the discrimination and to remediate the harm the discrimination has done to my child. I request that your district comply with the terms of the board approved settlement agreement and provide my child with needed special educational services and access to district programs."

20. On January 7, 2020, Mrs. Loof once again wrote to Ms. Kelly expressing concern that Sarah was being harmed by UUSD's failure to provide special education services. Mrs. Loof's letter pointed out that her child was being denied access to any and all programs and benefits of the UUSD to which she's entitled to. Mrs. Loof asked Ms. Kelly—UUSD's responsible official—to take steps to stop the discrimination and to remediate to the harm the discrimination has done to her child. She once again requested that UUSD provide Sarah with needed special educational services and access to district programs.

21. On April 9th, 2020, Mrs. Loof responded to correspondence from Nancy Kelly as follows:

"This would be the third time I respond to the same inquiry from your district. To date, you have not remedied any of the issues I have raised and instead, your letters continue to seek clarification to questions I have already repeatedly

answered. But, in an attempt to further collaborate and resolve the dispute amicably, I will once again respond.

I hereby reiterate my request for you as the Superintendent to stop the discriminatory actions perpetrated on my daughter by your district. Your letter of January 13, 2020, indicated that you have investigated my allegations. To date, you have produced no evidence whatsoever of said investigation and in fact your letter dated February 28, 2020 states that the District does not possess any documents responsive to my request that "meet the definition of a student record under FERPA". I also made the request under the California Public Records Act (PRA) and similarly you produced no records whatsoever. As acknowledged in your letter, the PRA (Government Code Section 6253.1) requires that UUSD assist me with making a focused request. Thus, I asked for your assistance in identifying records that would be responsive to my request but to date I have not received any such assistance. Specifically, I would like to know the term UUSD uses to classify records that are related to an investigation for allegations of discrimination by a student since you claim those records are not student records. I also request that you specify if you have any records whatsoever related to the alleged investigation mentioned in your January 13, 2020 letter and what types of records the district considers those to be since it appears they are not considered student records or public records. The District's letter of March 26, 2020 did not provide any answers to these questions.

Your letter of March 26, 2020 states:

"Please clarify the academic year or years you believe Sarah was discriminated against on the basis of disability and the District program she sought to

participate in but was denied. Once it receives this clarification, the District will respond accordingly."(double quotation marks not included)

Please refer to my previous correspondence wherein I indicated that that the grievance relates to past violations by UUSD. Under your leadership, the district has denied access to any and all of the district's educational programs for the 2018-2019 and 2019-2020 school years. The District has denied Sarah access to any and all of its programs.

Sarah remained in a high school setting until the age of 22 years as is allowed for students with disabilities. Because the District is a recipient of federal funds, it is subject to Section 504 and its implementing regulations (34 CFR 104.2). Sarah is a student qualified for Special Education services under IDEA 2004, whose disability is acknowledged by all to interfere severely with the major life activity of learning. Sarah therefore qualifies for accommodations and FAPE under Section 504, and she is entitled to the procedural safeguards of Section 504.

That Sarah qualifies for special education under IDEA in no way limits her rights under Section 504. Indeed, any denial or abridgment of her Section 504 due process rights because she has an IEP would constitute discrimination against her for having a qualifying disability under IDEA, and retaliation against her for making use of her rights under IDEA. Accordingly, 34 CFR 104.36 requires the District to provide Section 504 procedural safeguards.

Please provide me with copies of any and all policies and procedures your district follows regarding grievances related to Section 504 and the American with Disabilities Act.

I hereby reiterate my prior grievance for violations of Section 504 and the American with Disabilities Act. The District has failed or refused to respond to parents request for appropriate academic assistance and appropriate

interventions for Sarah. (Section 504 of the 1973 Rehabilitation Act, Violations of the 1964 Civil Rights Act, 29 U.S.C. 794(b); 34 CFR 104 et al seq.). In regards to your question as to other statutory schemes, please see Claim attached.

Please let me know if any additional information is needed. I look forward to hearing from you and to the timely and appropriate resolution of this matter."

22. Despite Mrs. Loof's repeated attempts to obtain an offer of FAPE from UUSD the District never convened an IEP meeting for the 2018-2019 school year and never conducted any assessments whatsoever. The District never allowed S.L. to access any of its programs and the District ignored Mrs. Loof's pleas for help.

## IV. FIRST CAUSE OF ACTION

For Reversal of the OAH Due Process Order to Dismiss.

23. Plaintiffs incorporate by reference each and every allegation of Paragraphs 1 through 22 of the Complaint as though fully set forth herein.

24. The ALJ erred in applying the law in at least two ways. First, the ALJ applied collateral estoppel to the entire case, even though Issues #11(a), #11(b), #12 and #14-#21 were completely unaddressed at any time. There was no final determination on those issues, because they were never litigated at all, nor addressed in any way by the ALJ at any time. Those issues were never addressed in the November 2020 decision and there is no OAH finding whatsoever that they were either dismissed or addressed. Student never received a response from OAH regarding the January 18,2021 request to amend. Student's request was timely as the hearing was set for February 23rd, 2021. An amended complaint may be filed when either (a) the other party consents in writing and is given the opportunity to resolve the complaint through a

resolution session or (b) the hearing officer grants permission, provided the hearing officer may grant such permission at any time more than five (5) days prior to the due process hearing. 20 U.S.C. § 1415(c)(2)(E)(I). Student's request for amendment was filed over a month prior to the scheduled date for hearing of February 23, 2021 which was more than the five days prior to the hearing specified in the statute. OAH's failure to render a decision regarding the amendment deprived Student of her rights under the IDEA. These issues (#11(a) & (b); #12 and #14-21) should be remanded to OAH to be heard, since they have not been administratively exhausted.

25. Second, the ALJ mistakenly found that refusal to consent to an evaluation not only exits a student from special education, but bars that student from special education eligibility forever thereafter. Thus, the issue of S.L.'s eligibility in 2018-2019 cannot have been decided yet, and the issues in 2018-2019 cannot have been identical to those in 2018-2019.

26. The parent never refused to allow assessment. There was never a determination by UUSD that S.L. was exited from special education. Contrary to the ALJ's holding, until S.L. aged out at age 22, she could always have been referred again for special education assessment. The parent did indeed make that referral for special education assessment on June 6, 2018, July 26, 2018 and May 14, 2019 which Defendant does not and cannot deny – but in any case on a motion to dismiss under 12(b)(6) non-movant's well-pled facts must be taken as true and reasonable inferences construed in non-movant's favor.

27. Assuming, arguendo, that the OAH November 2020 decision correctly concluded that the Parent's alleged failure to consent to assessments resulted in a revocation of consent to special education assessments and an offer of FAPE, then Mrs. Loof's letters of June 6th, 2018, July 26, 2018 and May 14, 2019 are subsequent referrals for initial assessment that would trigger UUSD's duty to

conduct it. In *Letter to Cox*, the Office of Special Education Programs ("OSEP") explained:

"After revoking consent for special education and related services for his or her child, a parent maintains the right to subsequently request an initial evaluation to determine if the child is a child with a disability who needs special education and related services. If a parent … later request that his or her child receive special education and related services, an LEA must treat this request as a request for an initial evaluation under 34 CFR § 300.301, rather than a reevaluation under 34 CFR § 300.303." 110 LRP 10357 (OSEP 2009).

The OAH November 2020 decision did not analyze whether or not the Parent letters of June and July 2018 constituted a new referral for assessments by the Parent thereby triggering UUSD's duty to conduct an initial evaluation.

28. The June 6, 2018, July 26, 2018 and May 14, 2019 referrals may not yet have entitled S.L. to services, but they did have entitle her to comprehensive assessment and the offer of a FAPE, which if accepted would have put her back in special education and entitled her to services. Indeed, even explicit parent revocation need not be permanent. See OSEP Letter to Cox (2009). Accordingly, whether or not S.L. became ineligible through refusal to consent to assessment, nothing about her future status was thereby settled. Failing to acknowledge any of this, the ALJ denied the parent any opportunity to try before a fact-finder all these questions regarding the 2018-2019 school year.

29. Defendant construed mother's request for more information as consent with conditions. But to request information is not a condition of consent. It is simply a request for information in order to enable *informed* consent. The impropriety here was not in the mother asking for information but in Defendant characterizing it is a condition of consent and refusing to provide it.

30. The November 2020 decision by its own admission did not deal with some of the 2018-2019 issues. The only issues in the OAH November decision, remotely related to the 2018-2019 school year were those raised by UUSD as Student raised no issues related to 2018-2019 in that case. Those issues were:

Issue #16. Was Student a parentally placed private school student for the 2017-2018 and 2018-2019 school years and, therefore, not entitled to a FAPE from Upland?

Issue # 17. Was Student entitled to a FAPE from Upland during the 2017-2018 and 2018-2019 school years after Parents refused to consent to the September 30, 2016, and October 24, 2016 assessment plans?

Issue # 18. If Upland was obligated to have an IEP in place for Student during the 2017-2018 and 2018-2019 school years, did the October 31, 2016 IEP constitute a FAPE, and continue to be in effect/available to Student through the final date of Student's eligibility for special education and related services?

Defendant's Motion to Dismiss acknowledges that OAH did not rule on Issues # 16 and #18 (Dkt. 10, p.6, ln 3-6) in OAH Case Nos. 2019080542, 2020040245, and 2020010465. These issues were brought by the District and Student did not bring up any issues related to the 2018-2019 school year. The November 2020 decision did not look into the new requests for assessments in 2018 and 2019 and therefore, those issues have never been heard.

The District's acknowledgement that OAH never rendered a decision on the above referenced issues is inconsistent with the argument that all issues related to the 2018-2019 school year were decided on as part of the due process case in OAH Case Nos. 2019080542, 2020040245, and 2020010465. It is clear that OAH did not render a decision on those issues further validating Plaintiff's request for OAH to allow a hearing on issues related to the 2018-2019 school year as presented by Plaintiff in OAH Case No. 2020090375. Plaintiff seeks a

clear remedy—for this Court to order OAH to hear the issues presented in OAH Case No. 2020090375.

The OAH November 2020 decision specifically states:

"Neither Student nor Upland prevailed on Issue 16" [November 2020 decision page 126].

"Neither Student nor Upland prevailed on Issue 18" [November 2020 decision page 126].

Thus, the question regarding the validity of the last IEP UUSD offered to Student in 2016 remaining in effect and being considered FAPE for Student, two years later, for the 2018-2019 school year, has never been addressed by OAH. In the November 24, 2020 decision, the ALJ made no specific findings and conclusions related to the claims raised in 2020090375. Rather, she made generic findings on the broad issues brought forth by the District and actually declined to declare a prevailing party on two of the three issues raised by the District (Issues #16 and #18). Please see *A.B. et al v. Clarke County School District, (M.D. Ga. 2009)* which remanded issues for which no specific findings and conclusions had been made by the ALJ. There was never any authority cited by the District supporting ALJ Hatfield's sua sponte conclusion that Student became ineligible for special education services after June 30, 2017. S.L. was never found to be ineligible for special education services by an UUSD IEP team. Pursuant to California Education Code 56043(c), eligibility is a question for the IEP team. S.L.'s eligibility should have been determined at an IEP meeting following the referrals for special education assessments in 2018 and 2019. But, UUSD never convened said IEP meeting, never conducted any assessments and never issued an assessment plan in response to the Parent's new referrals. Instead, two years later, OAH, acting as an IEP team, improperly concluded the S.L. was not eligible for special education. ALJ Hatfield's

decision did not come out until November 2020 therefore at the time of the 2018 and 2019 letters no one had decided student's eligibility. The November 2020 decision did not take into consideration any of the communications between UUSD and Mrs. Loof in 2018, 2019 or 2020 which involved the 2018-2019 school year.

31. The District argues that the November 24, 2020 OAH decision somehow precludes any issue related to the 2018-2019 school year. But the OAH decision relied on events that took place in 2016 and that somehow became frozen in time. IEP's are supposed to be held every year. It is inappropriate to conclude that the parent's alleged failure to consent to the district's assessment plan in 2016 extended into the 2018-2019 school year. Any events that took place in 2016 are outside the statute of limitation and therefore, it is inappropriate to assume that 2016 events should dictate the district's duties for the 2018-2019 school year. The facts and circumstances related to the 2016-2017 school year were of limited duration and therefore had no bearing on an analysis of events related to the 2018-2019 school year.

32. OAH's November 2020 decision did not address Issues #14 thru 21. Student was deprived of her right under 20 U.S.C. §1415(c)(2)(E)(I) to amend the Due Process complaint OAH Case No. 2020090375. OAH did not make a finding that these issues were barred by collateral estoppel. UUSD's pleadings to this Court fail to make any mention of Student's Issues #14 through #21.

## V. PRAYER FOR RELIEF

Plaintiffs request relief as follows:

1. The OAH administrative Order dismissing the entire OAH case 2020090375 based on collateral estoppel should be reversed because Issues #11(a), #11(b) #12 and #14-21 were never addressed at hearing. Defendant has never disputed

its failure to litigate these issues, and the ALJ never said that they were addressed in any way. As such they should be remanded to OAH to be heard for the first time.

2. The ALJ found that S.L. was not entitled to a hearing for the 2018/2019 school year, based on a prior decision regarding events involving the 2016/2017 period, and incorrectly held that exit from special education due to her alleged failure to consent to assessment forever excluded her from special education – even if the parent in 2018 and 2019 repeatedly referred her for assessment and consented to the Defendant's assessments in 2018 and 2019. This incorrect legal finding should be reversed, based on S.L.'s referral for special education assessment made by her mother on June 6, 2018.
3. That the Court order payment by Defendants of Plaintiff's attorneys' fees and costs incurred in the prosecution of this matter.
4. Such additional relief should be awarded as the Court determines to be appropriate.

Dated: September 24, 2021

LIBERTY LAW GROUP

By:

MICHAEL. T. STOLLER
Attorney for Plaintiffs